**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000574**
**11-DEC-2015**
**08:36 AM**

NO. CAAP-12-0000574

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN RE MARN FAMILY LITIGATION

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(Master File No. 00-1-MFL 3RD)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)


This appeal arises out of the sale of two contiguous parcels of real property located in Honolulu, commonly known as McCully Shopping Center (**MSC**) and the Lime Street Apartments (collectively, the **Property**). Appellee Liquidating Receiver Thomas E. Hayes (the **Receiver**) sold the Property on behalf of McCully Associates, a Hawai'i Limited Partnership, to M Pocket Corporation (**M Pocket**). Appellant Alexander Y. Marn (**Marn**)[1]

---

[1] Although Marn also purports to appeal in his capacity as a limited partner of McCully Associates and beneficiary and co-trustee of his trust, it appears that all of his arguments on appeal are made in his individual capacity.

challenges three post-judgment orders of the Circuit Court of the First Circuit (**Circuit Court**):[2]

(1)  the March 28, 2012 Order Granting Liquidating Receiver's Thomas E. Hayes' Motion for Confirmation of Sale of McCully Shopping Center and Lime Street Apartments, Filed 2/21/12 (**Order Confirming Sale**);

(2)  the May 16, 2012 Order Granting Liquidating Receiver's Motion For Reconsideration of Rule 54(b) Certification of Order Granting Liquidating Receiver Thomas E. Hayes' Motion for Confirmation of Sale of McCully Shopping Center and Lime Street Apartments, Filed 2/21/12, Filed March 28, 2012, Filed April 10, 2012 (**Order Granting Reconsideration**); and

(3)  the June 7, 2012 Amended Order Granting Liquidating Receiver's Motion for Confirmation of Sale of McCully Shopping Center and Lime Street Apartments, Filed 2/21/12, Filed March 28, 2012 (**Amended Order**).

Marn argues, in essence, that the Receiver abused his discretion in selling the Property to M Pocket after declining Marn's (arguably flawed) offers to purchase the Property and that the Circuit Court erred in confirming the Receiver's sale.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Marn's appeal as follows:

The Receiver argues that this court does not have jurisdiction to hear this appeal because the sale of the Property to M Pocket and Marn's failure to obtain a stay of the Amended Order moots any appeal.  "[M]ootness is an issue of subject matter jurisdiction.  'Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo.'"  State v.

---

[2]      The Honorable Rhonda A. Nishimura presided.

Nakanelua, 134 Hawai'i 489, 501, 345 P.3d 155, 167 (2015) (quoting Hamilton ex rel. Lethem v. Lethem, 119 Hawai'i 1, 4-5, 193 P.3d 839, 842-43 (2008)).

We thus address whether the mootness doctrine applies to the instant case.

> The general rule is that the right of a good faith purchaser "to receive property acquired at a judicial sale[3] cannot be affected by the reversal of an order ratifying the sale where a [supersedeas] bond has not been filed[.]" Leisure Campground & Country Club Ltd. Partnership v. Leisure Estates, 280 Md. 220, 223, 372 A.2d 595, 598 (1977). See also Citibank, N.A. v. Data Lease Fin. Corp., 645 F.2d 333, 336 (5th Cir. 1981). The purpose of the rule is to advance "the stability and productiveness of judicial sales [.]" 47 Am.Jur.2d Judicial Sales § 55 (1969). An exception to the rule is where the reversal is based on jurisdictional grounds. Id. at § 54. The second exception is where the purchaser is the mortgagee since he "does not free himself from the underlying dispute to which he is a party[.]" Leisure Campground, 280 Md. at 223, 372 A.2d at 598. See also 47 Am.Jur.2d Judicial Sales §§ 59-61.

City Bank v. Saje Ventures II, 7 Haw. App. 130, 133, 748 P.2d 812, 814 (1988); see also Lathrop v. Sakatani, 111 Hawai'i 307, 313, 141 P.3d 480, 486 (2006) ("[T]he sale of the property prevents the appellate court from granting any effective relief."). "Moreover, 'it is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot.'" Id. at 313, 141 P.3d at 486.

Here, the sale of the Property was confirmed by the Circuit Court and closed on September 19, 2012. Marn filed motions before both the Circuit Court and the Intermediate Court of Appeals (**ICA**) seeking a supersedeas bond to stay the closing of the sale under Hawai'i Rules of Civil Procedure (**HRCP**) Rule 62(d), and both the Circuit Court and the ICA denied his motions. Thus, Marn did not obtain a stay.

---

[3] It is well established that a receiver's sale is a judicial sale. See, e.g., Smith v. Pac. Heights Ry. Co., 17 Haw. 96, 98 (Haw. Terr. 1905) (discussing the distinction between "strictly judicial sales, such as sales in partition, guardianship, administration, receivership, foreclosure, admiralty, etc.," and "strictly legal sales," such as foreclosures under power of sale).

Nevertheless, Marn argues that the sale to M Pocket does not render the appeal moot because: (1) M Pocket expressly agreed to take title to the Property subject to the pending litigation; and (2) M Pocket was not a "bona fide purchaser" as it had both actual and constructive notice of the pending litigation. Marn contends that a stay or supersedeas bond was not necessary to preserve the ICA's ability to grant him relief.

In support of his first argument, Marn refers to a provision in the Property Description, which was attached as Exhibit A to the Limited Warranty Receiver's Deed, and which states that the described premises are:

> SUBJECT, HOWEVER, to the following:
>
> . . .
>
> 5.  Proceedings pending in the First Circuit Court in the matter of the Marn Family Litigation, Master File No. 00-1-MFL, in the Intermediate Court of Appeals and other related actions, disclosed by Order Granting in Part and Denying in Part Business Master's Second Motion for an Order Finding McCully Associates, Alex Y. Marn and Eric Y. Marn in Civil Contempt of Court for Failing to Pay the Business Master's and His Professionals' Fees and Costs recorded May 18, 2005, as Land Court Document No. 3270147; Receiver: Thomas E. Hayes.

(Emphasis added.)

Notwithstanding this court's November 30, 2012 order providing Marn (and the Receiver) an opportunity to further address the effect of this provision, Marn fails to provide any record citation to the referenced order, any other evidence in the record concerning the particular proceedings referenced in that order, or any evidence, argument, or authority supporting his contention that this provision should be interpreted as evidence that M Pocket agreed to take title to the Property subject to the outcome of Marn's June 2012 appeal challenging the Circuit Court's confirmation of the sale of the Property. Indeed, Sections 4.1(d), 4.2(d), and 6.1(a) of the Purchase and Sale Agreement between the Receiver and M Pocket appear to

indicate that M Pocket understood that future appeals would not affect the validity of the sale unless a stay was properly obtained pending an appeal of the sale confirmation prior to closing:

**4.1 Seller's Covenants, Representations and Warranties.**
. . .

d. <u>Good Faith Purchaser</u>. Seller and its representatives have proceeded in good faith and without collusion in all respects in connection with the Sale. Seller accepts Purchaser as a good faith purchaser of the Property and acknowledges that Purchaser is, therefore, entitled to all of the protections afforded by law. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate this Agreement shall not affect the validity of the sale, **unless such authorization is duly stayed pending such appeal prior to the Closing Date.**

. . .

**4.2 Purchaser's Covenants, Representations and Warranties.**
. . .

d. <u>Good Faith Purchaser</u>. Purchaser and its representatives have proceeded in good faith and without collusion in all respects in connection with the Sale. Purchaser is a good faith purchaser of the Property and is, therefore, entitled to all of the protections afforded by law. Accordingly, Purchaser acknowledges that the reversal or modification on appeal of the authorization provided herein to consummate this Agreement shall not affect the validity of the sale, **unless such authorization is duly stayed pending such appeal prior to the Closing Date.**

. . .

**6.1 Closing.**
. . .

a. <u>Appeal</u>. . . . **[In] the event that there is an appeal from the order confirming Purchaser's purchase of the Property and the appellant, prior to the Closing Date, obtains a stay of said order pending appeal,** Seller shall have the right to extend the Closing Date until thirty (30) calendar days after the final disposition of said appeal or the final disposition by the Court following remand by the appellate court, whichever is later or in Seller's sole discretion, cancel this Agreement at any time and refund all Deposits made by Purchaser within five (5) business days of Seller's notice of cancellation; provided, however, that **if a stay pending said appeal is granted and Purchaser is not in default of this**

5

> Agreement, Purchaser shall have the option to cancel
> this Agreement by written notice given no earlier than
> thirty (30) calendar days and no later than sixty (60)
> calendar days ·after the filing of the order granting
> the stay and receive a refund of all Deposits made by
> Purchaser within five (5) business days after Seller
> receives such written notice.

(Emphasis added.)

Marn further argues that M Pocket was not a "bona fide purchaser" of the Property because it had both constructive and actual notice of the pending litigation, and thus Marn was not required to obtain a stay. The seminal Hawai'i case dismissing an appeal as moot due to the sale of the subject property during the pendency of the appeal refers, however, to a "good faith purchaser." Saje Ventures II, 7 Haw. App. at 133, 748 P.2d at 814.[4]

In discussing the doctrine providing for dismissal of appeals as moot when the subject property has been sold,[5] this

---

[4] Several other cases have cited the "good faith purchaser" language from Saje Ventures II in support of dismissing appeals as moot. See, e.g., Pac. Mortg. Investors, LLC v. Johnson, No. 29317, 2009 WL 1600864 (Haw. June 8, 2009) (order dismissing appeal as moot); Pac. Mortg. Investors, LLC v. Johnson, No. 29760, 2009 WL 3970998 (App. Nov. 18, 2009) (order granting motion to dismiss appeal as moot); City Bank v. Abad Artemio M. Abad Revocable Trust Gloria P. Abad Revocable Trust, No. 27953, 2009 WL 5084083 at *4-6 (App. Dec. 28, 2009) (SDO) (appeal dismissed as moot where appellants did not file a supersedeas bond and obtain a court order staying the judgment confirming the sale of the subject property foreclosure sale to "third-party purchasers").

[5] Other jurisdictions have similarly protected the rights of good faith purchasers at lawfully executed judicial sales, holding that such sales, once confirmed and closed, render an appeal from the confirmation of the sale moot absent a stay. See, e.g., Hazzard v. Westview Golf Club, Inc., 217 A.2d 217, 224-25 (Me. 1966) ("Where a judicial sale is untainted by fraud, unfairness, collusion or mistake, public policy requires that its ratification be final, and, unless the decree of confirmation be stayed by proper and timely action, its consummation pending appeal in full compliance with the terms of the decree, will be unassailable. And the appeal therefrom becomes moot and subject to dismissal. . . . Public policy requires that the ratification of a lawful judicial sale shall be final and conclusive, except in cases of fraud or illegality, and that no judicial sale, when lawfully made, be set aside except upon substantial grounds, for otherwise the public

(continued...)

court cited 47 Am. Jur. 2d <u>Judicial Sales</u>[6] for the proposition

_____

[5](...continued)
would be loath to bid at such sales.") (internal citations omitted, format altered); <u>Arrow Sand & Gravel, Inc. v. Superior Court</u>, 700 P.2d 1290, 1293-94, 38 Cal. 3d 884, 888-891 (Cal. 1985) (en banc) ("Under section 917.4, the defendant in a foreclosure action can seek to stay the enforcement of an order of sale by submitting an undertaking in an amount fixed by the trial court to insure against waste. In the event such a defendant fails to obtain a stay from the trial court he may still seek supersedeas from the Court of Appeal. . . . [u]nless a defendant titleholder seeks and receives a statutory stay of enforcement or supersedeas from a higher court, the judicial sale may proceed. And, once consummated, the sale cannot be set aside for any reason."); <u>City of Riverside v. Horspool</u>, 167 Cal. Rptr. 3d 440, 452, 223 Cal. App. 4th 670, 682 (Cal. Ct. App. 2014) (dismissing an appeal from the trial court's orders appointing a receiver and authorizing the receiver to sell the subject property as moot where the appellant had failed to obtain a stay pending appeal); <u>Walton v. Severson</u>, 670 P.2d 639, 643 (Wash. 1983) (en banc) ("The order of confirmation, therefore, marks the point at which the sale becomes absolute. After confirmation, the sale may be set aside only for grounds such as fraud or mistake which would be sufficient to avoid such a sale between private parties. . . .Confirmation of the sale, therefore, is of critical importance to the purchaser because it marks the point at which the court's discretion to set aside the sale is exhausted. The purchaser should be able to determine with certainty the order by which the sale is confirmed.") (internal citations omitted); <u>Horvath v. Packo</u>, 985 N.E.2d 966, 981 (Ohio Ct. App. 2013) ("An order of confirmation thus becomes dispositive as to the propriety of the sale and the sale confirmation procedures . . . . [T]he final order of confirmation . . . cures all such irregularities, misconduct, and unfairness in the making of the sale, departures from the provisions of the decree of sale, and errors in the decree and the proceedings under it. Further, as we have previously stated, [i]n exercising its discretion in a foreclosure action, the court must keep in mind that the primary purpose of the judicial sale is to protect the interest of the mortgagor-debtor and to promote a general policy which provides judicial sales with a certain degree of finality. Therefore, the confirmation of a judicial sale cannot be set aside except for fraud, mistake or some other cause, for which equity would avoid a like mistake between private parties.") (internal citations, quotation marks, and emphasis omitted, format altered).

[6] Other sections from this authority provide guidance:

  The reversal of a decree directing a judicial sale, on account of an error or irregularities not going to the jurisdiction, does not vitiate the title of one who, as a stranger to the proceeding, has in good faith purchased property at the sale, either before an appeal or writ of error or pending the same without supersedeas. This principle advances the stability and productiveness of judicial sales and the value of titles derived under them

(continued...)

that "[t]he purpose of the rule is to advance 'the stability and productiveness of judicial sales[.]'" Saje Ventures II, 7 Haw. App. at 133, 748 P.2d at 814 (quoting 47 Am. Jur. 2d Judicial Sales § 55 (1969)). We have also held that "[i]n judicial sales, the court is the vendor [and][t]he confirmation of sale is the equivalent of a valid contract of sale. Consequently, application of contract law is appropriate when determining whether or not to set aside a judicial sale[.]" First Hawaiian Bank v. Timothy, 96 Hawai'i 348, 361, 31 P.3d 205, 218 (App. 2001) (quoting First Trust Co. of Hilo v. Reinhardt, 3 Haw. App. 589, 592, 655 P.2d 891, 893-94 (1982)).

> Generally, until a receivership court has confirmed a sale by the receiver, the court has discretion to set the sale aside if necessary to obtain the best possible price for the property; however, after confirmation, a sale may be set aside only for grounds such as **fraud or mistake which would be sufficient to avoid a sale between private parties**.

65 Am. Jur. 2d Receivers § 333 (201) (emphasis added and footnote omitted).

> A court in equity has jurisdiction to set aside a sale after confirmation whenever it is made to appear that the same was made through **mistake, inadvertence or improvidence, or on the ground of fraud whereby an improper advantage was obtained**. It is similarly a ground for vacating a confirmation that **the purchaser and others agreed or**

---

⁶(...continued)
and operates as well in the interests of the owners of the property sold as for the protection of purchasers.

47 Am. Jur. 2d Judicial Sales § 20 (2006) (footnotes omitted).

> Where available, the proper course for one considering the order of sale to be erroneous is to appeal from it and, by giving a supersedeas bond, prevent the title to the property from being irretrievably transferred. . . .
> The rule that in the absence of appropriate security given on appeal the title of the purchaser will not be defeated by a reversal has been applied also to an appeal from an order confirming the sale.

47 Am. Jur. 2d Judicial Sales § 21 (2006) (footnotes omitted).

> combined to stifle competition at the auction and thereby reduced the selling price of the property. . . . A receiver's sale of property will not be set aside for inadequacy of the price alone, in the absence of facts and circumstances showing fraud or material irregularities. Inadequacy of the sale price in connection with unfairness, injustice, or inequity in making the sale is sufficient to justify the court in setting aside an order of confirmation even where the purchaser has acted in good faith.

65 Am. Jur. 2d Receivers § 334 (2011) (emphases added and footnotes omitted).

Hawai'i courts have consistently held that the circuit court's authority to confirm judicial sales is a matter of equitable discretion, and that "[i]n exercising its discretion, the 'court should act in the interest of fairness and prudence, and with a just regard to the rights of all concerned and the stability of judicial sales.'" Sugarman v. Kapu, 104 Hawai'i 119, 124, 85 P.3d 644, 649 (2000); See also Industry Mortg. Co., L.P. v. Smith, 94 Hawai'i 502, 510, 17 P.3d 851, 859 (App. 2001); Brent v. Staveris Dev. Corp., 7 Haw. App. 40, 45, 741 P.2d 722, 726 (1987); Hoge v. Kane, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (1983).

In the instant case, Marn conflates the "good faith purchaser" requirement for judicial sales with the ability of a purchaser in a non-judicial real property transaction to assert a defense of being a "bona fide purchaser" who takes title free of third party claims, such as fraudulent transfers claims. In the non-judicial context, "bona fide purchaser" protection from third-party claims generally requires that the purchaser buys the property in good faith for value and without notice of any title defects or competing claims to the property.[7] The two California

---

[7] See, e.g., Kanamu v. Parke, 6 Haw. 91, 92 (Haw. Kingdom 1872) ("It has been a long and well settled principle that a purchaser for a valuable
(continued...)

cases Marn cites containing the "bona fide purchaser" language did not involve judicial sales, but pertained instead to competing claims to title based on recordation in title systems. Marn points to no precedent supporting his contention that this "bona fide purchaser" standard is applicable in the context of a judicial sale. Indeed, virtually every purchaser of a property in a judicial sale has notice of the pending litigation which, if we adopted Marn's argument, would leave virtually every judicial sale unsettled, even absent a stay pending appeal. This result would be completely contrary to the policy of advancing the stability and productiveness of judicial sales.[8]

---

[7](...continued)
consideration without notice has a good title, although the purchaser of one who had obtained the conveyance by fraud.") (quoting Jackson v. Walsh, 14 Johns. 407, 415 (N.Y. 1817)); Keawe v. Parker, 6 Haw. 489, 496 (Haw. Kingdom 1884) ("If the defendants are bona fide purchasers, without notice of the claim of [competing claimant], they are protected, according to well settled principles and by the statutes of this Kingdom."); Christian, by Holt, v. Waialua Agric. Co., 33 Haw. 34, 54 (Haw. Terr. 1934) ("[I]f a second purchaser, for value and without notice, purchases from a first purchaser, who is charged with notice, he thereby becomes a *bona fide* purchaser, and is entitled to protection.").

[8]     In the bankruptcy context, federal courts have similarly interpreted the "good faith" requirement from former Bankruptcy Rule 805, which has been codified in part at 11 U.S.C. § 363(m). Former Bankruptcy Rule 805 provided in pertinent part:

> Unless an order approving a sale of property . . . is stayed pending appeal, the sale to a *good faith* purchaser . . . shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser . . . knows of the pendency of the appeal.

Bankr.R. 805 (as amended, 1976; repealed 1983) (emphasis supplied). The Advisory Committee Note to the 1976 amendments adding this language to former Bankruptcy Rule 805 described it as "declaratory of existing case law." See Vista Del Mar Assocs., 181 B.R. at 424.

In re Thomas, 287 B.R. 782, 784 n.1 (9th Cir. B.A.P. 2002). "'Good faith' is a factual determination to be reviewed for clear error and can be defeated by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id. at 785
(continued...)

Marn does not allege that the sale to M Pocket involved any mistake, fraud, or illegality, only that M Pocket had both actual and constructive notice of the pending litigation relating to the Property. As discussed above, this notice does not affect M Pocket's status as a "good faith purchaser" for purposes of determining whether the sale renders this appeal moot. See also 47 Am. Jur. 2d Judicial Sales § 23 (2006) ("The fact that a purchaser at a judicial sale has notice merely of a contemplated appeal from the decree directing the sale does not deprive such

---

[8](...continued)
(citations and internal quotation marks omitted). The Ninth Circuit discussed the policy behind former Bankruptcy Rule 805:

> Former Bankruptcy Rule 805 . . . expresses a policy of finality of foreclosure sales absent a stay. In interpreting Rule 805, we have held that the sale of property of a bankrupt's estate to a good faith purchaser will not be affected unless the bankrupt obtained a stay of the order approving the sale.
> The primary goal of Rule 805 is to protect the interest of a good faith purchaser, third party or otherwise, of the property unless the order approving a sale is stayed pending appeal.
> . . .
> Neither Bankruptcy Rule 805 nor the accompanying committee notes define "good faith purchaser." See L. King, 2 Collier on Bankruptcy, ¶ 363.13 (15th Ed. 1985) ("No definition of good faith is attempted in the Code.") Lack of good faith, however, is determined by fraudulent conduct during the sale proceedings. In re Exennium, 715 F.2d at 1404-05.
>> The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.
> Prichard v. Sherwood & Roberts, Inc. (In re Kings Inn, Ltd.), 37 B.R. 239, 243 (Bankr. 9th Cir. 1984) quoting In Re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir. 1978).

In re Suchy, 786 F.2d 900, 901-02 (9th Cir. 1985) (footnote and internal citations omitted).

purchaser of the status of a purchaser in good faith.") (footnote omitted).

Moreover, neither of the two exceptions set forth in Saje Ventures II apply, as Marn does not request reversal of the orders based on jurisdictional grounds and M Pocket was not a mortgagee. See Saje Ventures II, 7 Haw. App. at 133, 748 P.2d at 814 ("An exception to the rule is where the reversal is based on jurisdictional grounds. The second exception is where the purchaser is the mortgagee[.]") (citations omitted).

Therefore, like in Saje Ventures II,

> the purchaser of the Property was [M Pocket], a third party not involved in the case. There is nothing in the record to indicate that [M Pocket] was not a good faith purchaser. There was no stay of the execution of the confirmation order and the sale of the Property has been closed. The grounds upon which [Marn] seek[s] reversal of the confirmation order are not jurisdictional in nature. Thus, even if this court were to reverse the [C]ircuit [C]ourt's confirmation order, the reversal would not affect the closed sale to [M Pocket].

Saje Ventures II, 7 Haw. App. at 133, 748 P.2d at 814-15. Accordingly, we conclude that the mootness doctrine applies to this appeal.

Finally, we consider whether an exception precludes the doctrine's application. The supreme court

> has explicitly recognized two exceptions to the mootness doctrine: (1) the "capable of repetition, yet evading review" exception [**CRER exception**]; and (2) the public interest exception. See Doe v. Doe, 116 Hawai'i 323, 327 n.4, 172 P.3d 1067, 1071 n.4 (2007) (noting the public interest and CRER exceptions are "separate and distinct"). Additionally, although never explicitly adopted by this court, the ICA, in In re Doe, 81 Hawai'i 91, 912 P.2d 588 (App. 1996), adopted and applied another mootness exception—the "collateral consequences" exception[.]

Hamilton Ex Rel Lethem v. Lethem, 119 Hawai'i 1, 5, 193 P.3d 839, 843 (2008).

The Receiver contends, and Marn does not dispute, that none of these exceptions apply to the instant case. In an appeal

from a post-judgment order in a judicial foreclosure action where the defendants-appellants had not filed a supersedeas bond or obtained a stay of the judgment confirming the sales, this court held that none of the exceptions to the mootness doctrine applied:

> The CRER exception to the mootness doctrine does not appear to apply to the instant case because the instant case would not evade review but for the fact that the Abad Defendants chose not to file a supersedeas bond. Therefore, the CRER exception to the mootness doctrine does not apply to the instant case.
>
> With regard to the public interest exception, the Supreme Court of Hawai'i has explained that, "[w]hen analyzing the public interest exception, this court looks to (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question." Lethem, 119 Hawai'i at 6-7, 193 P.3d at 844-45 (citation, internal quotation marks, and brackets omitted). The public interest exception to the mootness doctrine does not appear to apply to the instant case because (1) a foreclosure case arises out of a private contract between parties that does not involve the government, and, thus, a foreclosure is more of a dispute of a private nature rather than a public nature, (2) an authoritative determination for future guidance already exists within the holding in Saje Ventures II, 7 Haw. App. at 132, 748 P.2d at 814, and (3) the questions within the instant case will recur only when parties choose not to file a supersedeas bond to stay the circuit court's ruling pending appeal. Therefore, the public interest exception to the mootness doctrine does not appear to apply to the instant case.
>
> With regard to the collateral consequences exception, the Supreme Court of Hawai'i has "adopted the collateral consequences exception to the mootness doctrine in cases involving domestic violence TROs where there is a reasonable possibility that prejudicial collateral consequences will occur as a result of the entry of the TRO." Lethem, 119 Hawai'i at 9-10, 193 P.3d at 847-48 (internal quotation marks omitted). The collateral consequences exception to the mootness doctrine does not apply to the instant case because the instant case does not involve domestic violence or a temporary restraining order. Furthermore, the Abad Defendants could have avoided any prejudicial collateral consequences if they filed a supersedeas bond to stay the circuit court's ruling pending this appeal. Therefore, the

13

> collateral consequences exception to the mootness doctrine does not apply to the instant case.

City Bank v. Abad Artemio M. Abad Revocable Trust Gloria P. Abad Revocable Trust, No. 27953, 2009 WL 5084083 at *5 (Haw. App. Dec. 28, 2009) (SDO).

Similarly in the instant case, the CRER exception does not apply "because the instant case would not evade review but for the fact that [Marn failed] to file a supersedeas bond." Id. The public interest exception does not apply because the receiver sale in this case

> is more of a dispute of a private nature rather than a public nature, . . . an authoritative determination for future guidance already exists within the holding in Saje Ventures II, 7 Haw. App. at 132, 748 P.2d at 814, and . . . the questions within the instant case will recur only when parties [fail] to file a supersedeas bond to stay the circuit court's ruling pending appeal.

Id. Marn does not argue that the collateral consequences exception applies and it clearly does not. As no exception to the mootness doctrine applies to this case, we dismiss this appeal as moot.

DATED: Honolulu, Hawai'i, December 11, 2015.

On the briefs:

Alexander Y. Marn,
Alexander Y. Marn and
Ernestine L. Marn, as
Co-Trustees of the Revocable
Living Trust Agreement of
Alexander Y. Marn, dated
June 18, 1991
Plaintiff-Appellant Pro Se

Presiding Judge

Associate Judge

Associate Judge

14

Joseph W. Huster
(on the Joint Reply Brief)
for Appellant Alexander Y. Marn
and Ernsestine L. Marn, as
Co-Trustees of the Revocable
Living Trust Agreement of
Alexander Y. Marn, dated
June 18, 1991

Michael L. Freed
Mark B. Desmarais
(Tom Petrus & Miller LLLC)
for Appellee James Y. Marn, Jr.

Steven Guttman
Dawn Egusa
(Kessner Umebayashi Bain &
 Matsunaga)
for Appellee James K.M. Dunn,
Successor Trustee of the
Annabelle Y. Dunn Trust,
dated June 18, 1991

Louis K.Y. Ing
Tina L. Colman
(Alston Hunt Floyd &
 Ing)
for Liquidating Receiver
Thomas E. Hayes